IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHISN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ALLEN GORDON HUGHES, JR., | § § § | |
| Petitioner, | § § | |
| v. | § § | 2:16-CV-246 |
| UNITED STATES OF AMERICA, | § § § | |
| Respondent. | § § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE,
OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

Before the Court is petitioner ALLEN GORDON HUGHES, JR.'s Motion Under 28 U.S.C. § 2255 to Correct Sentence. By his motion, petitioner challenges his conviction, pursuant to a guilty plea, for the offense of possession with intent to distribute methamphetamine and the resultant 200-month sentence. For the reasons set forth below, petitioner's motion should be DENIED.

I.
BACKGROUND

On November 14, 2012, petitioner was charged in a two-count Indictment with the offenses of distribution and possession with intent to distribute methamphetamine (Count 1) and using and carrying a firearm in relation to a drug trafficking crime (Count 2). *United States v. Hughes*, Case No. 2:12-CR-48 (hereinafter "CR-ECF No.") ECF No. 1. On April 2, 2013, the Court appointed Bonita L. Gunden with the Federal Public Defender's Office to represent petitioner.

On August 20, 2014, petitioner signed a Plea Agreement providing, *inter alia*, that he agreed to waive certain rights in exchange for his guilty plea to the offense alleged in Count 1 of

the Indictment, that he understood the nature and elements of the offense to which he was pleading guilty, and that he agreed the Factual Resume he was signing was true and would be submitted as evidence. (CR-ECF No. 42). By signing the Plea Agreement, petitioner acknowledged the maximum penalties the Court could impose, stated that he understood the Court would impose the sentence after consideration of the United States Sentencing Guidelines and also that the guidelines were not binding on the Court. Petitioner also acknowledged that he had reviewed the guidelines with counsel but understood no one could predict with certainty the outcome of the Court's consideration of the guidelines in his case. *Id.* Petitioner acknowledged that he would not be allowed to withdraw his plea if his sentence was higher than expected and also that he fully understood the actual sentence imposed was solely in the discretion of the Court. *Id.* Petitioner averred his guilty plea was not the result of promises apart from those in the Plea Agreement and further that there had been no guarantees or promises from anyone as to what sentence the Court would impose. *Id.* Petitioner further acknowledged the Plea Agreement document was a complete statement of the parties' agreement. *Id.*

On that same date, petitioner signed a Factual Resume and agreed that the following facts were true and formed the basis for his guilty plea:

> On or about March 7, 2012, within the Amarillo Division of the Northern District of Texas, and elsewhere, Allen Gordon Hughes, Jr., defendant, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.
>
> On March 7, 2012, a trooper with the Texas Department of Public Safety (DPS) was patrolling Interstate Highway 40 in Oldham County, Texas, when he saw a gray passenger car exceeding the posted speed limit. The DPS trooper conducted a traffic stop of the vehicle and identified the driver, and sole occupant, as Allen Gordon Hughes, Jr. During the course of the traffic stop, the DPS trooper observed several circumstances that led the trooper to believe that Hughes was engaged in illegal activity. The DPS trooper asked for, and received, consent from Hughes to search the vehicle. When the DPS trooper opened the trunk, he saw that the spare

tire had been removed from its well and placed on the trunk mat. The DPS trooper lifted the trunk mat to inspect the spare tire well and saw five plastic-wrapped bundles inside. The DPS trooper placed Hughes under arrest. A later search of the five plastic bundles yielded a total of 6.21 net pounds of a substances that field tested positive for the presence of methamphetamine.

Later that same day, DPS narcotics agents met with Hughes. The DPS agents informed Hughes of his constitutional rights and he agreed to waive those rights and speak with agents. Hughes told the DPS agents that he had agreed to transport drugs for an individual that Hughes had met in prison. Hughes stated that he picked the drugs up in Los Angeles, California, and had intended to deliver the drugs to an unknown individual in Oklahoma City, Oklahoma.

Subsequent testing by the DEA South Central Laboratory confirmed that the substance Hughes possessed was, in fact, methamphetamine, a Schedule II controlled substance, with a total net weight of 2,192 grams, with at least 2,115.28 net grams of that total being pure, or actual, methamphetamine.

Hughes admits that he knowingly possessed 2,192 net grams of methamphetamine, a Schedule II controlled substance, and that he possessed that methamphetamine with the intent to distribute it.

At the re-arraignment hearing held the same day as the Plea Agreement was filed, petitioner entered a guilty plea to Count 1 of the Indictment. Petitioner confirmed he understood the nature of the charge against him, understood the consequences of his plea, and that the plea was made with his knowledge of any mandatory minimum penalty, as well as knowledge of the maximum penalty that could be imposed as a result of his plea. (CR-ECF No. 64). Petitioner also confirmed the Government had not made any other agreement with him other than what was in the Plea Agreement. *Id.* The Court accepted and entered petitioner's plea and then continued the case for sentencing pending the receipt of the probation officer's Presentence Investigation Report (PSR).

On October 8, 2014, a PSR was prepared. (CR-ECF No. 49). The PSR detailed petitioner's full offense conduct *and* detailed the events surrounding the traffic stop and search of his vehicle that resulted in the discovery of the methamphetamine petitioner was charged with possessing. *Id.* The PSR attributed a Base Offense Level of 38 for petitioner's charged offense due to the total

amount of drugs for which he was held accountable for possessing and distributing. *Id.* Petitioner was given a 2-level increase for possessing a dangerous weapon (including a firearm) during the course of the crime and an additional 2-level increase for obstructing justice. *Id.* Because petitioner absconded from bond supervision during his pretrial release, which resulted in the revocation of his bond, he was not given a downward adjustment for acceptance of responsibility; thus, his Total Offense Level was 42. *Id.* Petitioner's Criminal History Score was assessed at a 4 based on past adult convictions, resulting in a Criminal History Category of III. *Id.* Based on these calculations, the PSR recommended a guideline imprisonment range of 360 months to LIFE. *Id.* On October 22, 2014, counsel for petitioner filed objections to the PSR. (CR-ECF No. 50). Notably, petitioner objected to numerous factual statements in the PSR, but did *not* object to the facts concerning the traffic stop or search that resulted in his prosecution. *Id.* As a result of the objections, petitioner was given a 2-level reduction in the Offense Level based on the recent 2014 amendments to the guidelines, resulting in a new guideline range of 324 to 405 months. (CR-ECF No. 52-1). On November 5, 2014, petitioner's counsel submitted objections to the PSR Addendum, once again arguing petitioner should receive two criminal history points instead of three, but these arguments were unsuccessful. (CR-ECF No. 53). On November 13, 2014, the government filed its Motion for Downward Departure from the guideline range, based on petitioner's cooperation agreement with the government. (CR-ECF No. 13).

On November 18, 2014, the Court held petitioner's sentencing hearing. (CR-ECF No. 56). At the hearing, petitioner acknowledged he had read the PSR, believed he understood it, and thought everything in the PSR was correct. (CR-ECF No. 65). After allowing both counsel for the government and counsel for the petitioner to read the letter submitted by the petitioner at the outset of the sentencing hearing, the Court provided petitioner the opportunity for allocution. *Id.*

Petitioner declined to make a statement at that time. The Court granted the government's previously filed motion for a downward departure based on petitioner's cooperation, making the sentencing range 188 to 235 months. *Id.* Defense counsel requested the Court sentence petitioner at the "low end" this range. *Id.* The Court then sentenced petitioner to a 200-month term of imprisonment in the United States Bureau of Prisons, a sentence within the recommended guideline range and the prescribed statutory maximum sentence and explained that it set petitioner's penalty at the middle end of the guideline range. *Id.* The Court noted that the downward departure was granted despite petitioner's dangerousness to society. *Id.* The Court entered Judgment that same date. (CR-ECF No. 57).

Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Fifth Circuit. (CR-ECF No. 60). On September 8, 2015, the appellate court affirmed petitioner's conviction and sentence. (CR-ECF No. 72). Petitioner's conviction became final on December 8, 2015 when the time period for seeking additional review expired.

On November 14, 2015, petitioner filed his Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (ECF No. 3). On January 13, 2017, the government filed its response in opposition to petitioner's motion pursuant to section 2255. (ECF No. 8). On July 14, 2017, petitioner filed his reply. (ECF No. 14).

## II.
## PETITIONER'S ALLEGATIONS[1]

In this motion, petitioner contends he is being held in violation of the Constitution and laws

---

[1] Petitioner filed a reply on July 14, 2017 (ECF No. 14) listing six grounds for relief: (1) failure to notice the Court that the government's attorney was not licensed to practice law; (2) failure to seek suppression as to an illegal vehicle search; (3) erroneous advice as to whether to accept plea; (4) application of the enhancements; (5) Guideline level reduction in sentence; and (6) allocution error at sentencing. Petitioner did not seek to amend his motion to vacate, and the reply was filed well after the one-year deadline to file for collateral review by this Court. Thus, additional claims for relief will not be considered by this Court. To the extent these six claims relate back to his original three claims, the claims are addressed herein.

of the United States for the following reasons:

1. Petitioner's trial counsel was ineffective for failing to present exculpatory evidence concerning the traffic stop that resulted in petitioner's arrest and/or in failing to file a motion to suppress, rendering petitioner's plea involuntary;

2. The Court erred in failing to allow allocution by petitioner; and

3. The government breached the Plea Agreement by failing to file a §5K1 motion specifically requesting the "promised" sentence of a year and a day.

## III.
## MERITS

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255:

(1) the imposition of a sentence in violation of the Constitution or the laws of the United States;

(2) a lack of jurisdiction of the District Court that imposed the sentence;

(3) the imposition of a sentence in excess of the maximum authorized by law; and

(4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.

*United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

When a defendant enters a voluntary guilty plea, all nonjurisdictional defects in the proceedings are waived, including ineffective assistance of counsel, "except insofar as the ineffectiveness is alleged to have rendered the plea involuntary." *United States v. Samaniego*, 532 Fed. App'x 531, 534 (5th Cir. 2013) (citing *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000)).

Rule 8 of the Rules Governing Section 2255 Proceedings provides that "[i]f the motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted … to determine whether an evidentiary hearing is warranted." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006). Petitioner must present "independent indicia of the likely merit of [his] allegations." *Id.* at 264. Once such independent evidence is presented, "[a] motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Samaniego*, 532 Fed. App'x at 535 (citing *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992)). As discussed herein, the Court determines that petitioner failed to present independent indicia of the likely merits of his allegations and that the motion, files and records of the case conclusively show that petitioner is entitled to no relief. Thus, no evidentiary hearing was warranted.

A.   <u>Ineffective Assistance of Counsel – Illegal Search and Seizure</u>

Under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), to establish that Gunden rendered ineffective assistance of counsel, petitioner must show that (1) Gunden's performance fell below an objective standard of reasonableness based on the circumstances as they appeared at the time; and (2) petitioner suffered prejudice as a result. *Id.* "Judicial scrutiny of counsel's representation must be highly deferential … [with] every effort

made to eliminate the distorting effects of hindsight." *Id*. at 687–89. The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. The Supreme Court has determined that "the failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).

By challenging counsel's failure to file a motion to suppress, a nonjurisdicition "defect" waived by his plea, petitioner is in effect challenging the voluntariness of his plea. *See Samaniego*, 532 Fed. App'x at 534. A federal court will uphold a guilty plea challenged in a habeas proceeding provided the plea is shown to have been knowing, voluntary, and intelligent. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). A guilty plea is considered knowing, voluntary, and intelligent so long as a defendant has been advised and indicates that he knows and is aware of "the maximum prison term and fine for the offense charged." *Ables v. Scott*, 73 F.3d 591, 592 n. 2 (5th Cir. 1996) (citing *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)). Thus, if the habeas petitioner "understood the length of time he might possibly receive, he was fully aware of his plea's consequences." *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982). Put another way, a guilty plea is considered "voluntary" if it is made by a defendant who is " 'fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel' " and who has not been "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g*. bribes)." *Brady v. United States*., 397 U.S. 742, 755 (1970) (quoting *Shelton v. United States*., 246 F.2d 571, 572 n.2 (5th Cir. 1957)).

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy this requirement, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695–96. In this analysis, a defendant's sworn statements made to the court when a guilty plea is entered carry a strong presumption of verity, and the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).The Supreme Court has determined that "the representations of the defendant ... [at a plea hearing] as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73-74. An unambiguous plea agreement is "accorded great evidentiary weight." *United States v. Abreo*, 30 F.3d 29, 32 (1994). Thus, a reviewing court may "give great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002).

"Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, – U.S. –, 137 S. Ct. 1958 (2017). When a defendant's allegations contradict his sworn testimony given at a plea hearing, we have required more that "mere contradiction of his statements," typically "specific factual allegations *supported* by the affidavit of a reliable third

9

person." *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986).

Petitioner now claims that the information he swore to by signing the Factual Resume and by affirming the Factual Resume in open court during his re-arraignment is false. He claims now that he was not speeding and did not give consent to search his vehicle. (ECF Nos. 3, 14). However, the Factual Resume specifically indicates that petitioner was speeding and did give consent to search his vehicle. (CR-ECF No. 44). Further, during the re-arraignment proceedings, the Factual Resume was read aloud to petitioner and he twice confirmed that all information contained therein was true and correct. (CR-ECF No. 64). Petitioner has not provided the Court with any independent indicia that his admissions were false. Instead, petitioner sets forth his own contradictory statements and focuses the Court's attention on the possibly pretextual reasons for the stop. However, even if the police officer who stopped him did so for reasons other than merely speeding, the fact that petitioner acknowledged speeding in his Factual Resume indicates that the traffic stop was "justified at its inception." *See Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). A reasonable suspicion that a traffic violation occurred is enough. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Once it is determined that a traffic stop was justified at its inception, petitioner must show that continued detention was not justified, either through consent or through the development of reasonable suspicion. *Id*. Because petitioner acknowledged in his Factual Resume that he consented to the search, there would not be a reason to suppress the evidence seized.

In fact, petitioner's entire argument for counsel's failure to file a motion to suppress or argue "exculpatory" evidence of issues with the stop revolve around his new, conclusory and unsubstantiated claims that he lied in his Factual Resume and at his re-arraignment hearing. Further, petitioner openly acknowledges that his counsel discussed the possible "pretextual" or racist motives that the officer had when stopping him. Yet, petitioner does not indicate that his

counsel told him to lie in the Factual Resume or pressured him to lie about speeding or consent. Thus, the Court finds that the motion, files, and records of the case "conclusively show that the prisoner is entitled to no relief," and no evidentiary hearing is necessary. *Samaniego*, 532 Fed. App'x at 535. The petitioner's new claims that he was not speeding and did not give consent to search his vehicle contradict the "bulk of [petitioner's] conduct [and fail] to meet his burden of proof in light of other evidence in the record." *Cervantes*, 132 F.3d at 1110.

Petitioner's first ground should be denied.

B. Sentencing Error – Failure to Allow Allocution

Petitioner next argues the sentencing court erred by failing to provide him with the opportunity for allocution at the sentencing hearing. Petitioner did not appeal this issue, and it is procedurally defaulted. To the extent that petitioner argues appellate counsel was ineffective for failing to raise this issue on appeal in his reply brief, the Court finds that the claim should be denied because it is factually incorrect.

At the outset of petitioner's sentencing hearing, he presented a letter to the sentencing court requesting new counsel. (CR-ECF No. 65). The sentencing court recessed the case and allowed both defense counsel and the prosecutor to read the letter. *Id*. After the sentencing hearing reconvened, the petitioner was asked several questions about the presentence investigation report and his understanding of any objections. *Id*. Then the following occurred:

> THE COURT: "All right. Now, Mr. Hughes, as I told you earlier, I'd give you what – it's called the right of allocution. That means that you can make a statement to the Court. The Court will listen to what you have to say and consider it. Do you want to make a statement to the Court?"
>
> THE DEFENDANT: "Not any longer, Your Honor."
>
> THE COURT: "You do not?"
>
> THE DEFENDANT: "No, I do not."

11

(CR-ECF No. 65). Although the petitioner argues his counsel told him to "shut up!" off the record during the proceedings, the sentencing court did, in fact, give him the opportunity to for allocution. *Id*. Further, petitioner has failed to show (1) what he would have stated in allocution; and (2) how the allocution would have resulted in a lower sentence. Thus, petitioner failed to meet the prejudice requirement.

Petitioner's second ground should be denied.

C. The Government's Alleged Breach of the Plea Agreement – Failure to Follow Promise

By his final argument, petitioner argues that his understanding of the Plea Agreement was that he would receive a sentencing of a year and one day for his cooperation with the government.

To be constitutionally valid, a guilty plea must be knowing and voluntary. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)). Thus, a guilty plea may be invalid if induced by defense counsel's unkept promises. *See Harmason*, 888 F.2d at 1529. On the other hand, a defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath. *Cervantes*, 132 F.3d at 1110 (citing *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985)). "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73–74 (1977).

Nevertheless, a defendant may seek habeas relief on the basis of alleged promises, though inconsistent with representations he made in open court when entering his guilty plea, by proving:

(1) the exact terms of the alleged promise;

(2) exactly when, where, and by whom the promise was made; and

(3) the precise identity of an eyewitness to the promise.

*Cervantes*, 132 F.3d at 1110 (citing *Harmason*, 888 F.2d at 1529). If the defendant produces

*independent* indicia of the likely merit of his allegations, typically in the form of one or more affidavits from reliable third parties, he is entitled to an evidentiary hearing on the issue. *Cervantes*, 132 F.3d at 1110. If, however, the defendant's showing is inconsistent with the bulk of his conduct or otherwise fails to meet his burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary. *See Cervantes,* 132 F.3d at 1110 (citing *United States v. Smith*, 844 F.2d 203, 208 (5th Cir. 1988) (per curiam); *United States v. Raetzsch*, 781 F.2d 1149, 1152 (5th Cir. 1986)).

Petitioner is entitled to an evidentiary hearing only if the existing record proves the likely merit of his specific allegations of a promise. *See Cervantes*, 132 F.3d at 1111 (citing *Davis v. Butler*, 825 F.2d 892, 893–95 (5th Cir. 1987)). In this case, petitioner's signed Plea Agreement stated:

> The defendant understands that the sentence in this case will be imposed by the Court after consideration of the United States Sentencing Guidelines and the factors found in 18 U.S.C. § 3553(a). The guidelines are not binding on the Court, but are advisory only. The defendant has reviewed the guidelines with his attorney, but understands no one can predict with certainty the court of the Court's consideration of the guidelines in this case. The defendant will not be allowed to withdraw his plea if his sentence is higher than expected. The defendant understands that the actual sentence imposed (so long as it is within the statutory maximum) is solely the discretion of the Court.
> …
>
> This plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement. There have been no guarantees or promises from anyone as to what sentence the Court will impose.
> …
>
> This document is a complete statement of the parties' agreement and may not be modified unless the modification is in writing and signed by all parties.

(CR-ECF No. 42). Petitioner's Plea Agreement makes clear that no specific sentence was guaranteed or promised to him.

At re-arraignment, the district court judge reiterated much of what was set forth in the Plea Agreement, as well as the rights petitioner would forfeit by pleading guilty, assuring petitioner understood each of these matters. The sentencing court questioned the petitioner as follows:

> THE COURT: "Did anybody tell you – make any representation to you about what would happen in this case that is not in the written plea agreement and what the Court has told you?"
>
> THE DEFENDANT: "No, Your Honor."
>
> THE COURT: "Did anybody make any promise to you? Did the government make any agreement to you that's not in writing in the written plea agreement and supplement?"
>
> THE DEFENDANT: "No, Your Honor."

(CR-ECF No. 64). During the re-arraignment there is no indication that petitioner failed to understand that he was subject to a sentence up to the maximum possible penalty for his crime or that he failed to understand that his sentencing was ultimately at the discretion of the sentencing court. Further, there is nothing in the Plea Agreement or the re-arraignment transcript that indicates the government had made "other promises" to petitioner concerning his sentence.

This testimony and the plain terms of the Plea Agreement clearly refute petitioner's allegations that he was promised a lower sentence based on an agreement with the government. The Plea Agreement is short, clear, and unambiguous. Petitioner's colloquy with the sentencing court expressly contradicts the existence of any promises or agreements not contained in the Plea Agreement. Thus, an evidentiary hearing is not needed in this instance. *Cervantes*, 132 F.3d at 1111 (citing *Smith*, 844 F.2d at 208; *see also United States v. Brewer*, 60 F.3d 1142, 1145 (5th Cir. 1995)).

Petitioner claims he was not given the benefit of a §5K1 reduction based on his cooperation with the government and that neither his counsel nor the government brought up his cooperation

with the sentencing court. This is factually untrue. The government filed a motion for a downward departure days before the sentencing hearing. (CR-ECF No. 55). Further, the sentencing court *granted* the motion and significantly reduced the guideline range for the petitioner. (CR-ECF No. 65). Petitioner's argument that his error was not brought up on appeal is therefore unavailing.

The Court also notes that petitioner's motion never actually states that either the government prosecutor or his defense counsel told him he would receive a sentence of one year and one day in exchange for his plea of guilt. In fact, the opposite is true.

Petitioner's only details concerning the offer of "a year and a day" sentence concern an interview with DEA Task Force Officer Stan McNutt on March 7, 2012. (ECF No. 14). Petitioner argues his counsel should have raised this deal at his sentencing hearing, despite the §5K1 reduction of sentence and his own plea colloquy assuring the sentencing court that no other promises were made. Further, petitioner claims "no one can be certain what [petitioner] may have done, had his attorney informed him prior to the change of plea hearing that the government's DEA agent['s] promise would not be honored." *Id*. This very statement fails to meet the prejudice test as an unequivocal indication by petitioner that a different result would have occurred but for counsel's error. *See Strickland*, 466 U.S. at 689 (petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Additionally, petitioner attached an exhibit to his motion (Exhibit D) that also makes clear that his attorney told him *before* his plea not to expect a sentence of a year and a day, and specifically discussed the agreement for a sentence reduction based on his cooperation.

Petitioner's final ground should be denied.

### D. New Claims

In his reply brief, petitioner raises claims that he had not previously asserted in this action.

He claims the prosecutor was not licensed to practice law, he was given erroneous advice by counsel concerning his plea, and sentencing enhancements were wrongly applied. Notably his claim about sentencing enhancements was addressed by the Fifth Circuit on appeal and is therefore not cognizable. "It is well settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in 2255 motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). Additionally, a court's misapplication of the sentencing guidelines is not cognizable in a section 2255 motion. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

Rule 2(b) of the Rules Governing Section 2255 Proceedings requires that motions filed pursuant to 28 U.S.C. § 2255 "specify all the grounds for relief available to the moving party," and claims raised for the first time in a reply brief need not be considered by the Court. *See United States v. Saenz*, 282 F.3d 354, 355–356 (5th Cir. 2002). However, petitioners may amend their section 2255 motions, but only in accordance with Federal Rule of Civil Procedure 15. *Id.* Here, petitioner did not include these additional claims in his original motion. Although his reply brief states that the listed claims "clarify" his original ineffective assistance of counsel claims, the Court addressed the six listed claims only to the extent that they relate to his original three claims. These claims are therefore waived, as they were presented for the first time in petitioner's reply.

## IV.
## RECOMMENDATION

For the reasons set forth above, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by petitioner ALLEN GORDON HUGHES, JR. be DENIED.

## V.
## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability" ("COA"). 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed an appeal, the Court nonetheless addresses whether he would be entitled to a COA. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists could not debate the denial of petitioner's section 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Thus, the undersigned further recommends that a COA be denied.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a file marked copy of the Findings, Conclusions and Recommendation to petitioner and to each attorney of record by the most efficient means available. IT IS SO RECOMMENDED.

ENTERED January 8, 2020.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is

fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).